UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 17bk05030 |
| Trina D. Whitlock-Young, | ) | |
| | ) | Chapter 13 |
| Debtor. | ) | |
| | ) | Judge Timothy A. Barnes |
| | ) | |

TIMOTHY A. BARNES, Judge.

## MEMORANDUM DECISION

Before the court is the Debtor's Motion to Approve the Setting Aside/Vacate [sic] of Judicial Sale [Dkt. No. 47] (the "Motion") filed by Trina D. Whitlock-Young (the "Debtor"). The Motion seeks to vacate a postpetition sale and acts relating thereto conducted by Planet Home Lending, LLC ("PHL") of property on which the Debtor and a third-party are co-obligated, as the sale and such acts violated the co-debtor stay. By further filing, the Debtor also seeks sanctions against PHL for violating the co-debtor stay and the later-imposed automatic stay.

The Motion raises a number of questions that are matters of first impression for the court. As a result, briefing beyond that normally provided on such motions was sought and received by the court. Upon review of that briefing and those questions, the court finds that the postpetition judicial sale violated the co-debtor stay and that the sale is void. The court further finds that the Debtor has standing to and may enforce the co-debtor stay with respect to the sale and subsequent acts relating thereto. The Debtor has, however, failed to demonstrate an entitlement to damages. As a result, the Debtor's motion is GRANTED insofar as it seeks to have the sale and subsequent acts in relation thereto determined to be void but, in all other respects, is DENIED.

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code, or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Bankruptcy judges must therefore determine, on motion or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(3). As to the former, the court may hear and determine such matters. 28 U.S.C. § 157(b)(1). As to the latter, the bankruptcy court may hear the matters, but may not decide them

without the consent of the parties. 28 U.S.C. §§ 157(b)(1) & (c); *In re Radco Merch. Servs., Inc.*, 111 B.R. 684, 686 (N.D. Ill. 1990). Instead, the bankruptcy court must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." 28 U.S.C. §157(c)(1).

Matters concerning the automatic stay and the co-debtor stay are matters solely arising out of the bankruptcy case itself. As such, those matters are core proceedings and within the court's statutory and constitutional authority. 28 U.S.C. § 157(b)(2)(G); *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*, 140 B.R. 969, 976–77 (N.D. Ill. 1992). Such authority includes the granting of declaratory relief in relation thereto. *See, e.g., In re Ace Track Co., Ltd.*, 556 B.R. 887, 899 (Bankr. N.D. Ill. 2016) (Barnes, J.) ("Granting such a request [for declaratory judgment] under section 105 is clearly within the court's authority); *see also* 11 U.S.C. § 105(a); 28 U.S.C. § 2201 (the Federal Declaratory Judgment Act) (affording "any court of the United States" the power of declaratory judgment); *In re Caesars Entm't Operating Co., Inc.*, 808 F.3d 1186, 1188 (7th Cir. 2015) (section 105 "grants the extensive equitable powers that bankruptcy courts need in order to be able to perform their statutory duties"); *U.S. Lines, Inc. v. Am. S.S. Owners Mut. Prot. & Indemnity Assoc., Inc. (In re U.S. Lines, Inc.)*, 197 F.3d 631 (2d Cir. 1999) (bankruptcy court, in a core proceeding, may decide declaratory judgment), *cert. denied* 529 U.S. 1038, 1038 (2000).

Further, each party has voluntarily submitted itself to this court's jurisdiction (the Debtor by petitioning for chapter 13 relief, and PHL by filing a proof of claim) [1] or has impliedly consented to this court's jurisdiction, and thus the court may constitutionally hear and determine the matters as core matters. *Radco Merch. Servs., Inc.*, 111 B.R. at 686; *see also Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1939 (2015); *Richer v. Morehead*, 798 F.3d 487, 490 (7th Cir. 2015).

Accordingly, determination of the Motion is within the scope of the court's jurisdiction and constitutional authority.

## SUMMARY OF ISSUES PRESENTED

As noted above, the Motion presents a number of questions that are issues of first impression before the court. With respect to standing, the Motion raises the question of a debtor's role in enforcing the co-debtor stay, especially when that debtor is statutorily without automatic stay protection due to repeated bankruptcy filings. With respect to the co-debtor stay, the Motion raises the question of whether a *quasi in rem* foreclosure proceeding under Illinois law violates the limited scope of the co-debtor stay. Finally, with respect to damages, the Motion raises the question of what damages, if any, a debtor is entitled to with regard to a co-debtor stay violation.

To better understand these questions, it is first necessary to consider the context in which they arise.

---

[1] Official Form 410 of Planet Home Lending, LLC dated June 21, 2017 [Claim No. 9-1] (the "Proof of Claim").

## PROCEDURAL HISTORY

In assessing the Motion, the court has considered the arguments of parties at hearings on the Motion on April 27, 2017, June 29, 2017 and August 3, 2017 (collectively, the "Hearings") and has reviewed the Motion and each of the following related filings:

(1)    Application to Set Hearing on Emergency Motion [Dkt. No. 45] (the "Application for Emergency Hearing");

(2)    Order Denying Application to Set Hearing on Emergency Motion [Dkt. No. 46];

(3)    [Scheduling] Order [Dkt. No. 50];

(4)    Response to Debtor's Motion to Approve the Setting Aside/Vacate [sic] of Judicial Sale [Dkt. No. 55] (the "Response");

(5)    Debtor's Reply in Support of a Finding That Creditor Planet Home Funding Violated the Co-Debtor's Stay under 11 USC 1301 [Dkt. No. 58] (the "Reply");

(6)    [Scheduling] Order [Dkt. No. 62] (the "Supplemental Scheduling Order");

(7)    Supplemental Response to Debtor's Motion to Approve the Setting Aside/Vacate [sic] of Judicial [Dkt. No. 63] (the "Creditor's Supplement");

(8)    Debtor's Supplemental Brief in Support of Her Motion to Vacate the Judicial Sale [Dkt. No. 64] (the "Debtor's Supplement"); and

(9)    Exhibit F [Dkt. No. 65] (the "Motion to Approve Sale").

The court has also taken into consideration any and all exhibits submitted in conjunction with the foregoing. In addition to the foregoing, the court has also reviewed and found to be of relevance the following filings in the Debtor's case:

(10)   Official Form 101, Voluntary Petition for Individuals Filing for Bankruptcy [Dkt. No. 1] (the "Petition");

(11)   Notice of Motion and Motion to Impose Automatic Stay [Dkt. No. 12];

(12)   Notice of Motion and Motion to Impose Automatic Stay (Amended) [Dkt. No. 16] (the "Motion to Impose Stay");

(13)   Order Imposing Automatic Stay [Dkt. No. 22] ("Order Imposing Automatic Stay");

(14)   Notice of Motion and Motion to Confirm Existence of Co-Debtor's Automatic Stay [Dkt. No. 25];

(15)   Order [Denying Motion to Confirm Existence of Co-Debtor's Automatic Stay] [Dkt. No. 30];

(16)    LBL Chapter 13 Model Plan, Modified Chapter 13 Plan dated 4/20/17 [Dkt. No. 41]
(the "Plan");

(17)    Order Confirming Plan [Dkt. No. 43] ("Confirmation Order"); and

(18)    PHL's Proof of Claim.

Though these items do not constitute an exhaustive list of the filings in the above-captioned
bankruptcy case, the court has taken judicial notice of the contents of the docket in this matter. *See
Levine v. Egidi*, No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993 (authorizing a bankruptcy
court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill.
2011) (Goldgar, J.) (recognizing same).

## BACKGROUND

The issue before the court represents the latest in the push and pull between a secured
lender seeking to enforce its rights in collateral and a debtor intent on preventing the same. The
collateral in question is real property, commonly known as 15300 South Evers, Dolton, IL 60419
(the "Property"). The Debtor owns the Property as a tenant in the entirety with her spouse, Glenn
Young (the "Co-Debtor"). The Property is encumbered by a mortgage originally in favor of
Fremont Investment & Loan that was recorded on October 27, 2005 and signed by both the Debtor
and the Co-Debtor as wife and husband.[2] As noted in footnote 2, *supra*, that mortgage has had a
series of Lenders associated with it.

It appears that, beginning in 2012, the Debtor began using the bankruptcy system to prevent
the Lenders' collections efforts. The Debtor attempted five bankruptcy cases in the five years
preceding this case.[3] PHL or one of the then present Lenders was noticed in each case, and in the
three cases that made it beyond the initial stages, filed a proof of claim. While the Debtor was
successful in confirming a plan in three of the cases, all of the cases ended in dismissal for failure to
make required payments (four for failure to make plan payments, one for failure to pay the filing

---

[2] Neither party makes clear how exactly PHL fits into the existing mortgage. As best as the court can make
clear from the documents that were provided and the Proof of Claim, Fremont Investment & Loan
("Fremont") assigned the mortgage to UBS Real Estate Securities ("UBS"), which in turn assigned it to PFG
Mortgage Trust II ("PFG"), which in turn assigned it to Branch Banking and Trust Company ("Branch", and
together with Fremont, UBS and PFG, the "Lenders"). The Motion to Approve Sale named Branch as the
plaintiff. In a previous case, Branch filed a claim and listed PHL as the servicer of the mortgage, but that
relationship was not made clear in the Proof of Claim filed by PHL in this case. For the purposes of this
Memorandum Decision, it is not necessary to make that connection. PHL filed a Proof of Claim in this case
and admits that it was party to the Sale (defined below), *see* Response, at ¶ 5. It was therefore PHL that acted
as the creditor for the purposes of the court's determination herein, and any acts determined to be void
herein are void regardless of whether brought by PHL or by one of the Lenders.

[3] Case No. 12-34026 (filed August 28, 2012, dismissed January 13, 2014); Case No. 14-19460 (filed May 23,
2014, dismissed November 12, 21014); Case No. 15-11564 (filed March 31, 2015, dismissed October 6, 2015);
Case No. 16-11958 (filed April 7, 2016, dismissed July 13, 2016); Case No. 16-29666 (filed September 17,
2016, dismissed December 28, 2016). All of the Debtor's bankruptcy cases have been cases under chapter 13
of the Bankruptcy Code.

fee). Undaunted, on February 21, 2017 (the "Petition Date"), the Debtor commenced her sixth case—the above-captioned chapter 13 case.

Because two of the Debtor's previous bankruptcy cases were pending and dismissed in the year prior to the Petition Date, *see supra* n.3, the Debtor received no bankruptcy stay protection automatically on the Petition Date. 11 U.S.C. § 362(c)(4). As this is a chapter 13 case, however, the protection of the co-debtor stay was afforded automatically on the Petition Date. 11 U.S.C. § 1301(a).

Despite the existence of that co-debtor stay, the Property being listed in the Debtor's schedules A/B and D and notice of the bankruptcy being provided to PHL,[4] however, the day after the Petition Date the Property was apparently sold at public auction (the "Sale"). *See* Motion to Approve Sale.[5] Both the Debtor and the Co-Debtor were named as defendants in the foreclosure Sale. *See id.*; Creditor's Supplement, p. 4.

The court imposed the automatic stay on March 9, 2017. *See* Order Imposing Automatic Stay. Despite having notice of the Debtor's motion, *see* Motion to Impose Stay (service list on notice of motion attached thereto), PHL did not object. PHL has also not sought relief from the imposed stay or the co-debtor stay.[6] Thereafter on March 16, 2017, the Debtor sought by motion declaratory judgment that the co-debtor stay was in effect in the Debtor's case. That motion was denied as an improvident request for an advisory opinion,[7] without prejudice to the Debtor seeking relief in another form.

On April 20, 2017, the court confirmed the Debtor's chapter 13 Plan. *See* Confirmation Order. The Plan treats PHL's Proof of Claim by providing that the Debtor is responsible for

---

[4] *See* Petition, p. 52 (creditor address matrix). The address contained on the matrix matches the address on PHL's Proof of Claim. The Debtor also alleges to have faxed notice to PHL. *See* Exhibit C to Debtor's Supplement. While PHL argues that it did not receive notice, that argument is unpersuasive in light of the record before the court.

[5] Filed four days after the date ordered for such filings, Exhibit F appears to be a motion by PHL in the state court seeking to approve the Sale. *See* Motion to Approve Sale (captioned "Creditor's Motion for Order Approving Report of Sale and Distribution, Confirming Sale and Order of Possession, and for a Personal Deficiency Judgment"). While the Motion to Approve Sale is less than clear, it is stated that the Sale was held on February 22, 2017, and that a report of that Sale was included with the Motion to Approve Sale when filed with the state court. *Id.*; *see also* Response, at ¶ 4. No further documents (including such report) have been provided. Nonetheless, PHL admits that it "proceeded with the sale." Response, at ¶ 5.

[6] *See* Discussion section C, *infra*, for a discussion of PHL's raising the prospect of annulment in defense of the Motion.

[7] *See Ace Track*, 556 B.R. at 899 n.9 (explaining that while declaratory judgment is within the court's authority, without an actual controversy to which the request pertains, it is advisory and outside the court's authority). Unless a statute or order provides otherwise, see, e.g. 11 U.S.C. § 362(c)(4)(A)(ii), without an actual case or controversy, parties must make their own determinations as to a statute's or order's application to them. In re FedPak Sys., Inc., 80 F.3d 207, 211-12 (7th Cir. 1996).

making postpetition mortgage payments directly to PHL and that arrears be paid out of Plan payments submitted to the chapter 13 trustee.[8] PHL did not file an objection to the Debtor's Plan.

On April 21, 2017, the Debtor sought an emergency hearing on the Motion at bar. *See* Application for Emergency Hearing. Because the Debtor failed to plead affirmative relief for which an emergency hearing was necessary, that emergency hearing was denied. Thereafter, on April 22, 2017, the Debtor filed the Motion on ordinary notice. Notice of the Motion was provided to PHL. The initial Hearing on the Motion was set for April 27, 2017.

Nonetheless, three days later, on April 25, 2017,[9] PHL sought to have the Sale confirmed by the state court. *See* Motion to Approve Sale. Among other things, PHL proposed a personal deficiency judgment in the amount of $193,151.93 against both the Debtor and the Co-Debtor.[10] It is unclear whether or if the Motion to Approve Sale was set for presentment before the state court and equally unclear how the state court disposed of the matter at that hearing, if such a hearing took place. Neither the Debtor nor PHL explained this in their supplements.[11] The Debtor does allege, however, that PHL's counsel "argued that there was no such concept as a co-debtor automatic stay." Debtor's Supplement, p. 5. Assuming that is true, it is nonetheless unclear if that statement was made before the state court or was made privately to Debtor's counsel.

At the first hearing on the Motion, the Debtor and PHL appeared and the court entered a briefing schedule. The matter was set for a continued hearing on June 29, 2017. While PHL timely filed its Response, the Debtor filed her Reply eight days late. At the continued hearing, the court expressed its concerns regarding the Debtor's standing, whether the co-debtor stay affected the *quasi in rem* Sale and how confirmation of the Plan affected the Sale.

Given these additional issues, the court permitted each of the parties to file no later than July 20, 2017 supplements addressing these issues. While both parties timely filed their supplemental briefs, the Debtor once again missed an ordered deadline by filing Exhibit F thereafter.

On August 3, 2017, the court announced its oral ruling on the matter, with a written decision to follow. This Memorandum Decision is the contemplated written decision.

## DISCUSSION

The foregoing history answers most of the traditional questions raised in a stay violation case. For example, there is little doubt that PHL had notice of the bankruptcy filing and knowledge of bankruptcy law and nonetheless acted postpetition in a willful manner in an attempt collect upon

---

[8] *See* Plan at Section C and Section E5.

[9] There is some confusion regarding this date. In the Debtor's Supplement, the Debtor provides dates in 2016 for the filing of the Motion to Approve Sale and subsequent hearing. Debtor's Supplement, pp. 4-5. The Motion to Approve Sale itself, however, makes clear that the dates are in 2017. *See* Motion to Approve Sale. It also provides more accurate amounts for the deficiency sought therein. *Id.*

[10] Debtor's Supplement, p. 4; Motion to Approve Sale.

[11] As noted above, the Debtor referenced a presentment date in 2016, which plainly cannot be correct. *See* Debtor's Supplement, p. 4.

its debt. There is also no question that PHL knew or should have known that its actions were incautious at a minimum.

However, this case defies traditional analysis. The Debtor here, while clearly a repeat filer with a history of failing to make her required bankruptcy payments, has nonetheless had more success in her cases than the average repeat filer—confirming plans in four out of six cases, for example. There is, at least on the limited record before the court, no indication that the Debtor sought to manipulate the operation of her bankruptcy cases. For example, the Debtor appears to have scheduled the debt at issue in each case and attempted to notice the Lender in existence at the time of the case.

Still, Congress chose to limit the application of the automatic stay in cases such as these. Because the Debtor had had two cases pending and dismissed in the year prior to this case being filed, she did not receive protection from the general bankruptcy stay automatically. 11 U.S.C. § 362(c)(4). She did, however, receive protection from the co-debtor stay. 11 U.S.C. § 1301(a).

The Debtor, therefore, is relegated to seeking protection under the co-debtor stay for, at least for the Sale itself.[12] That a debtor who has no statutory protection from the automatic stay can nonetheless receive essentially the same protection by way of the co-debtor stay appears, on its face, to be contrary to Congress's intent. As this question could be viewed to be one of standing, it is a gating question and the court takes it up first.

A.  The Debtor's Standing

The court raised the question of standing in this matter given the foregoing optics of this particular matter—a debtor seeking to enforce a third-party protection when no direct protection was available.

"In every federal case, the party bringing the suit must establish standing to prosecute the action." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014). When standing is at issue, the central inquiry is "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf. *Simon v. Kentucky Welfare Rights Organization*, 426 U.S. 26, 38 (1976), *quoting Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (emphasis omitted).

Standing questions arise on two levels: the Article III case or controversy question and the question regarding prudential limits on a court's exercise of its authority. *See United States v. Windsor*, 133 S. Ct. 2675, 2685 (2013); *Elk Grove*, 542 U.S. at 11-12.

---

[12] As noted above, the court later imposed the stay in this case. While the Sale predates the imposition of the stay, the filing of the Motion to Approve Sale did not. The filing of that motion and the subsequent acts relating thereto appear to constitute independent violations of both the co-debtor stay and the automatic stay. The Debtor nonetheless advances her arguments in the Motion under the co-debtor stay alone. While she, in later filings, attempts to add arguments relating to the automatic stay, that late addition without leave is improper. *See* Discussion section C, *infra*, for a discussion of both the Debtor's and PHL's attempts to raise issues outside of the scope of the Motion.

With respect to the former, the Supreme Court has made clear that there are three elements to satisfy:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) "actual or imminent, not 'conjectural' or 'hypothetical'". Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations and footnote omitted).  Here there is a clear, actual injury (the loss of the Debtor's house), a connection between the injury and the conduct complained of and a remedy beyond mere speculation.  It is clear to the court that the Debtor has Article III standing.

With respect to the latter, prudential standing appears at first glance to be implicated. Prudential standing once included what was once referred to as "statutory standing."  *Lexmark Int'l*, 134 S. Ct. at 1382 ("A statutory cause of action is presumed to extend only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'") (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).  If that were the case, the issue before the court would be quite complicated, as the Seventh Circuit law is unclear regarding whether a court may raise a question of prudential standing *sua sponte*.  *Compare MacLauchlan v. Prudential Ins. Co. of America*, 970 F.2d 357, 359 n.1 (7th Cir. 1992) ("we may not raise prudential standing issues *sua sponte*.") *with MainStreet Org. of Realtors v. Calumet City, Ill.*, 505 F.3d 742, 749 (7th Cir. 2007) (that statement in *MacLauchlan* "should be regarded as dictum rather than holding").

It is not necessary to resolve that conflict here, however, as *Lexmark* made clear that inquiries into statutory standing were not ones of standing or prudence, but rather are straightforward statutory interpretation questions.  *Id.* at 1387-88 & n.4.

Looking at the statute, it is clear that the automatic stay is best designed to protect the Debtor from the injury here—the loss of her home.  *See* 11 U.S.C. § 362(a).  Under circumstances such as were present here, however, Congress has determined that such protection is unwarranted. 11 U.S.C. § 362(c)(4).  Nonetheless, the plain language of the co-debtor stay under section 1301 appears also to apply.  11 U.S.C. § 1301(a).  If the plain language of section 1301 affords the Debtor a right to enforce its provisions, this inquiry is satisfied.

While section 1301(a) of the Bankruptcy Code speaks only to protection of the co-debtor, section 1301(d) provides that:

> Twenty days after the filing of a request under subsection (c)(2) of this section or relief from the stay provided by subsection (a) of this section, such stay is terminated with respect to the party in interest making such request, *unless the debtor* or any individual that is liable on such debt with the debtor *files and serves upon such party in interest a written objection to the taking of the proposed action.*

11 U.S.C. § 1301(d) (emphasis).

Further, the legislative history of the co-debtor stay provides that it exists "to protect a debtor operating under a chapter 13 repayment plan case by insulating him from indirect pressures from his creditors exerted through friends or relatives that may have cosigned an obligation of the debtor." H. Rep. No. 95–595 to accompany H.R. 8200, 95th Cong., 1st Sess. 426 (1977), *reprinted in* 11 U.S.C.S. § 1301 at 450, U.S. Code Cong. & Admin. News 1978, at 5787, 6381; *In re Pressimone*, 39 B.R. 240, 244 (N.D.N.Y. 1984).

Taken together, the express language of section 1301(d) and the legislative history of section 1301 make clear that a debtor is intended to have a dog in this particular fight. That is the only reading of this section available under the circumstances. *In re Ryan*, 725 F.3d 623, 262 (7th Cir. 2013) ("It is the province of the legislature to choose language that maximizes its own purposes, and for the courts to give that language its plain meaning or, where it is ambiguous to interpret it in the manner most consistent with the statutory language as a whole, its purpose, and in a manner that will render it constitutional.").

While the court sympathizes with PHL's position that the Debtor is attempting here to bootstrap herself to relief that is otherwise intentionally unavailable, it is clear that Congress also intended the protections under section 1301 and section 362 to exist independent of one another.[13] When Congress conditioned the application of the automatic stay in circumstances such as these, it could have made the same conditions applicable to the co-debtor stay. It did not. *In re Lemma*, 393 B.R. 299, 304 (Bankr. E.D.N.Y. 2008) ("There is no language in section 362(c)(3) that states or implies that when the stay terminates automatically with respect to the debtor by reason of his prior filings, the co-debtor stay terminates as well.").

It should be noted that at least one other bankruptcy court has addressed these concerns, though the facts were the inverse of those at bar. *Hope v. United Funding Cos., Inc. (In re Holder)*, 260 B.R. 571 (Bankr. M.D. Ga. 2001). In *Holder*, the standing of a co-debtor to enforce the co-debtor stay was challenged. *Id.* at 576-77. The creditor in that case argued that the co-debtor was not the intended beneficiary of the co-debtor stay. *Id.* While that argument is clearly belied by section 1301(d)'s express language giving both the debtor and the co-debtor the right to object to relief thereunder, the court did not reach the issue on its merits. Instead, the court found that, as violations of the co-debtor stay are void *ab initio* in the Eleventh Circuit, there was no need to focus on standing. *Id.* at 577 ("[T]his Court finds that Defendant's perfection of its interest is void as a violation of the codebtor stay and finds that it is of no consequence that [co-debtor] is the party who raised the issue with this Court.").

While it is this court's conclusion that the Debtor here has Article III standing and is statutorily entitled to assert the protections of the co-debtor stay for her own benefit, the reasoning

---

[13] This observation is consistent with that of the courts that have held that termination of the automatic stay does not automatically result in termination of the co-debtor stay. *See, e.g., King v. Wells Fargo Bank, N.A. (In re King)*, 362 B.R. 226, 233 (Bankr. D. Md. 2007); *In re Muhaimin*, 343 B.R. 159, 165 (Bankr. D. Md. 2006); *Harris v. Margaretten & Co., Inc. (In re Harris)*, 203 B.R. 46, 50 (Bankr. E.D. Va. 1994); *Central Fidelity Bank v. Cooper (In re Cooper)*, 116 B.R. 469, 472 (Bankr. E.D. Va. 1990); *In re Jones*, 106 B.R. 33, 35 (Bankr. W.D.N.Y. 1989).

of *Holder* supports the court's earlier conclusion with respect to the declaratory nature of this request. *See supra.*

B.  The Scope of the Co-Debtor Stay

As was noted earlier, had the Debtor properly sought relief for a violation of the automatic stay, the matter would require little by way of adjudication by the court.  There is no question (i) that the Debtor's residence is property of the Debtor's bankruptcy estate, *see* 11 U.S.C. § 541; *see also* 11 U.S.C. § 1306; (ii) that such property of the estate would have been protected by the automatic stay from postpetition actions such as foreclosure, 11 U.S.C. § 362(a)(2)-(4) (*in rem* stay provisions); *In re Kuzniewski*, 508 B.R. 678, 784 (Bankr. N.D. Ill. 2014) (Lynch, J.) (the automatic stay "stops all collection efforts, all harassment, and all foreclosure actions.") (citations and internal quotation omitted); (iii) that, in light of the notice given, continuing with the Sale and the filing of the Motion to Approve Sale and subsequent acts would have been willful, *see In re Radcliffe*, 563 F.3d 627, 631 (7th Cir. 2009) (willfulness exists when a creditor takes questionable action despite the awareness of a pending bankruptcy proceeding); and (iv) that, as a result, the Debtor would be entitled to seek damages.  11 U.S.C. § 362(k).

The Debtor does not properly and, at least for the period before the stay was imposed, could not assert a cause under the automatic stay.  Instead, she advances it under the co-debtor stay, which states that:

> Except as provided in subsections (b) and (c) of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a *consumer debt* of the debtor *from any individual* that is liable on such debt with the debtor, or that secured such debt, unless—
>
> > (1) such individual became liable on or secured such debt in the ordinary course of such individual's business; or
> >
> > (2) the case is closed dismissed, or converted to a case under chapter 7 or 11 of this title.

11 U.S.C. § 1301(a) (emphasis added).

The emphasized provisions of the co-debtor stay raise two points of contention regarding its application here:  First, is the mortgage debt in question a consumer debt?  Second, is a foreclosure action an attempt to collect from an individual.

As to the first point of contention, the Bankruptcy Code defines a consumer debt as a, "debt incurred by an individual primarily for a personal, family, or household purpose."  11 U.S.C. § 101(8).  That definition leaves some room for interpretation, and there has been a split of authority as to whether a debt that secures a principal residence qualifies as a consumer debt.  *Compare King*, 362 B.R. at 232 ("A debt securing a debtor's principal residence qualifies as a consumer debt."); *Morris v. Zabu Holding Co., Inc.* (*In re Morris*), 385 B.R. 823, 828-29 (E.D. Va. 2008) (same); *In re Kelly*, 57 B.R. 536 (Bankr. D. Ariz. 1986) (same); *In re Bryant*, 47 B.R. 21, 23, 26 (Bankr. W.D.N.C. 1984) (same) *with In re Ikeda*, 37 B.R. 193, 195 (Bankr. D. Hawaii. 1984) ("consumer debts" did not include a mortgage lien secured by real property used as debtors' principal residence); *Brunswick Employees*

*Credit Union v. Nenninger (In re Nenninger)*, 32 B.R. 624, 626 (Bankr. W.D. Wis. 1983) (same); *Gibbs v. Randolph (In re Randolph)*, 28 B.R. 811, 813 (Bankr. E.D. Va. 1983) (same); *In re Stein*, 18 B.R. 768, 769 (Bankr. S.D. Ohio 1982) (same).

It should be noted that the cases in the latter category predate revisions to the Bankruptcy Code that support the reasoning of those in the former. As the Ninth Circuit stated:

> The Code defines "consumer debt" as "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(7) (1982). "Debt" means "liability on a claim," 11 U.S.C. § 101(11) (1982), and "claim," in turn, is broadly defined as any "right to payment, whether or not such right is ... *secured, or unsecured.*" 11 U.S.C. § 101(4)(A) (1982) (emphasis added). A literal reading of the Code's simple language leads inexorably to the conclusion that consumer debt includes secured debt. Indeed, section 521(2) of the Code, also added by the 1984 Act, makes special provision for "consumer debts which are secured by property of the estate," an unambiguous indication that Congress intended that the "secured or unsecured" language of the definition apply to consumer debts.

*Zolg v. Kelly (In re Kelly)*, 841 F.2d 908, 912 (9th Cir. 1988); *see also In re Booth*, 858 F.2d 1051, 1054-55 (5th Cir. 1988) (adopting a test of consumer debts that focuses on the profit motive behind the transaction, not the secured status of the debt). The more recent decisions of the Ninth and Fifth Circuits appear to reflect the proper considerations here.

In this case, the Debtor stated that the Property is her primary residence and that has not been challenged. There is no indication that the Debtor or the Co-Debtor use the Property for any profit motive or business purpose. As such, the debt underlying the mortgage on the Debtor's residence is a consumer debt.

As to the second point of contention, the language of the co-debtor stay is most closely parallel to section 362(a)(1), one of the *in personam* stay provisions. Congress clearly created fine distinctions in crafting the automatic stay. For example, of *in rem* provisions in the automatic stay, three are directed at property of the estate and one is directed at property of the debtor. *Compare* 11 U.S.C. § 362(a)(2)-(4) ("property of the estate") *with* 11 U.S.C. § 362(a)(5) ("property of the debtor").

It appears from its plain language, therefore, that the co-debtor stay does not afford *in rem* protection. *Accord Smith v. Capital One Bank (USA), N.A.*, 845 F.3d 256, 259 (7th Cir. 2016) ("For the co-debtor stay to apply: 1) there must be an action to collect a consumer debt, 2) the consumer debt must be debt of the debtor, and 3) *the action to collect must be against an individual* that is liable on such debt with the debtor.") (emphasis added). *But see Jones*, 106 B.R. at 35 (rejecting without analysis creditor's contention that the co-debtor stay affords no *in rem* protection). Once again, had Congress intended it to provide such protections, the existence of section 362(a)(2)-(5) make clear that it knew how to do so.

That is not, however, the end of the inquiry. While it may be tempting to conclude that a foreclosure action is one *in rem* and thus does not implicate the co-debtor stay, applicable Illinois law and the facts of this matter are to the contrary.

In Illinois, mortgage foreclosure proceedings are what are known as *quasi in rem* actions. *ABN AMRO Mortg. Grp., Inc. v. McGahan*, 931 N.E.2d 1190, 1196 (2010). In *McGahan*, the Supreme Court of Illinois stated:

> One of the pivotal differences between *in rem* and *quasi in rem* actions is whether the defendant is the property or a named person. In *in rem* actions, the property itself is the defendant, while in *quasi in rem* actions, a named party is the defendant. In a foreclosure action, the property is not the defendant. Rather, the mortgagor, the person whose interest in the real estate is the subject of the mortgage, is a necessary party defendant to the foreclosure proceedings. As such, the proceeding must be brought against a named party and a foreclosure action must be a *quasi in rem* action.

*Id.* at 1196–97 (citations omitted).

In making that distinction, the Supreme Court of Illinois underscored the reasons that a defendant is named personally, including that the harm sought to be remedied was that of the defendant, not the property. As was stated in *McGahan*, "[t]he object of the foreclosure action is to enforce the obligation created by that contract, through the property, but against a specific person." *Id.* at 1197; *cf. Littke v. Trustcorp Mortgage Co. (In re Littke)*, 105 B.R. 905, 909 (Bankr. N.D. Ind. 1989) (in addition to violating the *in rem* protections of the automatic stay, a foreclosure action violated the *in personam* ones).[14] That the court there contrasted such cases against actions *in rem*, which are not against the individual, *id.* at 1197, underscores that the wording of the co-debtor stay does not afford *in rem* protection.

For the purposes of the co-debtor stay then, an Illinois foreclosure action is an action against the named parties. Commencing or continuing an Illinois foreclosure action which names a co-debtor under these circumstances implicates the co-debtor stay. In this matter, the Co-Debtor was a named defendant. *See* Motion to Approve Sale (caption includes Co-Debtor). As a result, the foreclosure action was an action to collect all or part of a consumer debt of the Debtor from the Co-Debtor, and fell within the scope of the co-debtor stay. Continuing with the Sale violated the co-debtor stay, as did the filing of the Motion to Approve Sale and subsequent actions relating thereto.

Finally, though the foregoing is compelling, it would have been enough that PHL sought a deficiency judgment in the Motion to Approve Sale. It states that "Plaintiff is entitled to a personal deficiency judgment against GLENN YOUNG, TRINA WITHLOCK-YOUNG in the sum of $193,151.93." *Id.* If for no other reason than that, the Motion to Approve Sale violated the co-debtor stay.

---

[14] Even if the matter were in the name of a debtor or co-debtor only and does not implicate property of the estate, such as when a party wishes to sue for insurance coverage, the plain language of the automatic and co-debtor stays requires stay relief to proceed. *In re Pasquinelli Homebuilding, LLC*, 463 B.R. 468, 473 (Bankr. N.D. Ill. 2012) (Cox, J.).

C. Remedies

Having determined that the co-debtor stay was violated and that the Debtor has both standing to pursue relief relating thereto and statutory ground to do, the question becomes: What relief is available? This inquiry falls into two parts: First, what relief is automatic under the statute, if any? Second, what discretionary relief is available?

As to the first question, once again, this is not as simple as it appears. The statute is of no help, and the law relating to the nature of the stay is often incorrectly based on the law of injunctions. *See, e.g., Ace Track* ("While modern parlance collapses stays and injunctions, an injunction normally arises from the court's jurisdiction and inherent authority over individuals and property, and the power to issue such injunctions is presently codified in the All Writs Act, 28 U.S.C. § 1651. The stay, on the other hand, is rooted in the law of moratory, the governmental power to safeguard the diffuse economic interests of the people, often used to stay collection activity.") (internal citation omitted).

Still, without resolving the nature of the stay, a fair amount of case law exists on one topic: Whether automatic stay violations are void *ab initio* or voidable. That is has been a topic of ongoing debate in bankruptcy matters for decades,[15] and the pros and cons of each position are beyond the scope of this Memorandum Decision.

The Seventh Circuit has not definitely decided its position on this debate. When first faced with the question, it stated that "[o]rders issued in violation of the automatic stay provisions of the bankruptcy code, *see* 11 U.S.C. § 362 (1978), ordinarily are void." *Matthews v. Rosene*, 739 F.2d 249, 251 (7th Cir. 1984). More recently, it reiterated that position, stating that "[a]ctions taken in violation of an automatic stay ordinarily are void." *Middle Tennessee News Co. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1082 (7th Cir. 2001). Had that been all that was stated, it would be enough to remove most doubt (though the "ordinarily" qualifier injects a fair amount of doubt into the issue).

Unfortunately, in the latter case, the Seventh Circuit injected further doubt when it footnoted this statement, therein implying that it might reconsider this position were the circumstances right. *Id.* at 1082 n.6 ("We have no occasion to reconsider our precedent and forage into the debate among the circuits over whether such actions are void or merely voidable because it is not necessary to the disposition of this case.") (internal citation omitted). It did so again even more recently, when it stated that in a matter before it that the plaintiff "may or may not be correct that his lawsuit against Brown was void *ab initio*." *Kimbrell v. Brown*, 651 F.3d 752, 755 (7th Cir. 2011) (citing to and making the same reservation of fn.6 in *Middle Tennessee News*).

Still, between *Rosene* and *Middle Tennessee News*, most courts in this jurisdiction conclude that automatic stay violations are void. *See, e.g., Richard v. City of Chicago*, 80 B.R. 451, 453 (N.D. Ill. 1987) (finding that, absent modification, a postpetition tax sale in a chapter 13 case was void *ab initio*).

That does not, however, automatically mean that co-debtor stay violations should be treated the same. The majority of the courts that have considered this question, however, have equated the

---

[15] *See, e.g.*, T.A. Barnes, Note, *The Plain Meaning of the Automatic Stay in Bankruptcy: The Void/Voidable Distinction Revisited*, 57 OHIO STATE L.J. 291 (1996).

two in this context, and this court sees no reason to do otherwise. *See, e.g., Harris v. Margaretten & Co., Inc. (In re Harris)*, 203 B.R. 46, 50 (Bankr. E.D. Va. 1994), *aff'd*, 100 F.3d 950 (table), 1996 WL 659434 (4th Cir. 1996) (finding that the same principles that apply to the automatic stay apply to the co-debtor stay in this regard).

As a result, it is this court's determination that actions taken in violation of the co-debtor stay are "ordinarily" void, *cf. Middle Tennessee News*, 250 F.3d at 1082; *Rosene*, 739 F.2d at 251, and are in fact void in this matter. In this instance, this means that the Sale, the Motion to Approve Sale and subsequent acts are a nullity.

As to the second question, once again, the statute is of no help. Section 362(k) of the Bankruptcy Code sets forth damages available for automatic stay violations, though courts have reached beyond the scope of that statute on occasion to assess damages via section 105 and the courts' inherent power of contempt. *See* 11 U.S.C. § 362(k); *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1190 (9th Cir. 2003) (party may seek civil contempt damages under section 105 for stay violation); *In re Morris Senior Living, LLC*, Case No. 13 C 2064, 2013 WL 5753834, at *11 (N.D. Ill. Oct. 22, 2013) (same); *see also Cent. States, Se. & Sw. Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1376 (7th Cir. 1992) (suggesting that a stay "violation might of course expose the violator to contempt proceedings, as with any other violation of a judicial order.").

Section 362(k) is, however, expressly limited to the automatic stay. 11 U.S.C. § 362(k) ("an individual injured by any willful violation of a stay *provided by this section* shall recover actual damages…") (emphasis added). It is therefore the avenue of civil contempt that appears to be the one most taken in these circumstances. *Patti v. Fred Ehrlich, PC*, 304 B.R. 182, 187 (E.D. Pa. 2003) ("A bankruptcy court may redress violations of a stay effective under the authority of 11 U.S.C. § 1301 through the power granted to it under the Bankruptcy Code. 11 U.S.C. § 105(a)."); *In re Rick*, No. 12-31026-SVK, 2014 WL 7011029, at *3 (Bankr. E.D. Wis. Dec. 11, 2014) ("Section 1301 does not provide an affirmative remedy for violations of the co-debtor stay. Instead, a bankruptcy court may redress violations of the co-debtor stay through the power granted under § 105(a) of the Bankruptcy Code.").

It is clear that bankruptcy courts have the power of civil contempt. *See* Fed. R. Bankr. P. 9020(b); *see also* 11 U.S.C. § 105; *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 916–17 (7th Cir. 2001) (bankruptcy courts' "power to determine civil contempt is explicitly conferred"). It is equally clear that it is the party requesting sanctions by way of civil contempt that bears the burden of showing that such sanctions are appropriate. Unlike section 362, which sets forth the parties' burdens on motions for relief from the automatic stay, *see* 11 U.S.C. § 362(g), section 1301 makes no mention of the burdens. The court must assume that is intentional. *See Russello v. United States.*, 464 U.S. 16, 23, (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion.").

In the absence of a specific allocation of burdens, the movant bears the burden, as they do in all civil matters. *Simmons v. Kmart Corp. (In re KMart Corp.)*, 381 F.3d 709, 714 (7th Cir. 2004); *In re Kimball Hill, Inc.*, 565 B.R. 878, 891 (Bankr. N.D. Ill. 2017) (Barnes, J.). That burden is by the preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

Here, the Debtor has not met that burden. In the initial Motion, the Debtor requests no relief other than the voiding of the Sale. In her Reply, she adds to that request a mention of sanctions, but says nothing more. It is only once we get to the Debtor's Supplement, which was requested by the court for a specific purpose and not as the third opportunity for the Debtor to state what should she have stated from the outset, that the Debtor finally mentions potential damages including emotional distress. No evidence of any damages is provided.

This simply does not suffice to make a case for damages. Beyond the voiding of the Sale, which is the automatic consequence of the violation of the co-debtor stay and is the sole relief sought by the Debtor in the Motion, the Debtor has failed make a case. The court will not award damages under these circumstances.

In closing, the court is compelled, both by the immediately preceding observation and its frustration with how the parties have proceeded here generally, to address additional mistakes of procedure made by each party in this matter. These mistakes relate to how, if at all, new issues should be injected into a matter before the court.

As noted, the Debtor's Motion sought only relief relating to the co-debtor stay. Nonetheless, in later filings, the Debtor attempted to expand the relief sought to that under the automatic stay. That is improper. Without prior leave of court, movants may not raise new issues in reply briefs. *Aircraft Gear Corp. v. Marsh*, Case No. 02 C 50338, 2004 WL 2222262, at *2 (N.D. Ill. Sept. 30, 2004) (movants may not raise new issues in reply briefs). The Debtor's choice to proceed under the co-debtor stay alone was a tactical error, as the automatic stay had been imposed prior to the bringing of the Motion but before some of the actions complained of. It does not, however, justify the attempt to shoehorn new arguments into a motion already before the court. "Counsel's conclusion that [she] made a tactical error does not justify a do-over." *In re Husain*, Case No. 15-3308, 2017 WL 3393056, at *2 (7th Cir. Aug. 8, 2017).

Along the same lines, PHL seeks to inject a request to annul the co-debtor stay into its Response. Once again, this is improper. Requests for affirmative relief should be brought by motion, not combined with objections. *Garner v. Select Portfolio Servicing, Inc.*, Case No. 15-CV-10377, 2015 WL 871402, at *1 (E.D. Mich. Feb. 27, 2015) ("[C]ombining objections … with a motion for affirmative relief is improper."); *Delaney v. Tilton*, Case No. 1:07 CV F1219LJODLB, 2008 WL 5411932, at *1 (E.D. Cal. Dec. 24, 2008) (A party "may not combine a motion with the objections."). While such a request is likely improvident on its merits given the confirmed Plan treating both the Property and PHL's Proof of Claim, *see, e.g., In re Harvey*, 213 F.3d 318, 321 (7th Cir. 2000) ("It is a well-established principal of bankruptcy law that a party with adequate notice of a bankruptcy proceeding cannot ordinarily attack a confirmed plan."); *In re Chappell*, 984 F.2d 775, 782 (7th Cir. 1993) (same); *In re Morrow*, 495 B.R. 378, 388 (Bankr. N.D. Ill. 2013) (confirmed plan has *res judicata* effect, precluding relief from stay on preconfirmation grounds), given the improper manner in which it was raised, the court need not consider it here.[16]

---

[16] Given the court's ruling regarding the co-debtor stay's effect on the Sale, it is not also necessary to consider whether the confirmation of the Plan affected the Sale. There was no Sale for the Plan, as the Sale was a nullity.

CONCLUSION

Having considered all of the foregoing, the court therefore concludes that there has in fact been a violation of the co-debtor stay here.  The Sale and the Motion to Approve Sale and subsequent acts relating thereto are acts prohibited by section 1301(a), and as a result, are void. Beyond that determination, however, the Debtor has failed to make a case.

As a result, the Debtor's Motion is well taken insofar as it asks this court to determine that co-debtor stay under section 1301 was violated and Sale and the Motion to Approve Sale and subsequent acts relating thereto are void.  The Motion will be GRANTED in that respect only.  In all other respects, the Motion will be DENIED.

A separate order will be issued concurrent with this Memorandum Decision to that effect.

Dated: August 10, 2017

Timothy A. Barnes
United States Bankruptcy Judge